# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:14cv151-FDW

| | | |
|---|---|---|
| **DOUGLAS DURANT LIPFORD, II,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **MIKE BALL,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court upon Douglas Lipford's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Also before the Court is Respondent's Motion to Dismiss.  (Doc. No. 7.)

## I.    BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who, on August 14, 2012 was convicted of two counts of robbery with a dangerous weapon and two counts of conspiracy to commit robbery with a dangerous weapon after trial by jury in Caldwell County Superior Court. (J. and Commitment, Resp't's Ex. 1, Doc. No. 7-2.)  The State's evidence tended to show that:

> In the fall of 2010, there were a string of robberies involving a number of retail establishments, including, inter alia, a Dollar General store and a Domino's pizza location, in Lenoir, North Carolina.  On 26 October 2010, Lenoir Police arrested Latanya Nicole Taylor on an unrelated drug charge, and she ultimately implicated Defendant, who had been her boyfriend, and a third person, in the robberies.  Ten eye-witnesses to the various robberies testified that Defendant had a firearm, nine of whom said the gun was a handgun.  However, Ms. Taylor—who was only present at the robberies at the Dollar General and at the Domino's—said, with regard to the incident at the Dollar General, that Defendant was carrying "[a] BB gun[.]"

State v. Lipford, 758 S.E.2d 185, 2014 WL 859557 (N.C. Ct. App. 2014) (unpublished).  The

trial court sentenced Petitioner to 64-86 months imprisonment for each of the robbery with a

dangerous weapon offenses and 25-39 months imprisonment for each of the conspiracy to

commit robbery with a dangerous weapon offenses, the sentences to run consecutively.  (J. and

Commitment, supra.)

On March 4, 2014, the North Carolina Court of Appeals filed an unpublished opinion

finding no error in part and dismissing Petitioner's appeal in part.  Lipford, 2014 WL 859557 at

* 9.  Petitioner was represented on appeal by Mr. M. Alexander Charns.

On April 4, 2014, Petitioner, by and through Mr. Charns, filed a petition for discretionary

review ("PDR") in the Supreme Court of North Carolina.  (Resp't's Ex. 6, Doc. No. 8-7.)  On

June 11, 2014, the Supreme Court of North Carolina denied the PDR.  (Order Den. PDR,

Resp't's Ex. 8, Doc. No. 8-9).

Petitioner signed and placed the instant habeas Petition in the prison mailbox on

September 4, 2014.  (Pet., supra, at 15.)  It was filed in this Court on September 5, 2014, along

with a Motion for Appointment of Counsel (Doc. No. 2).  After conducting an initial review

required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District

Courts, the Court denied the Motion for Appointment of Counsel and ordered Respondent to file

a response to the Petition.  (Doc. No. 3.)  Respondent filed an initial Response (Doc. No. 6) and a

Motion to Dismiss on the grounds that Petitioner had failed to exhaust any of the claims raised in

the habeas Petition (Doc. No. 7). Petitioner subsequently filed a Response to the Motion to

Dismiss.  (Doc. No. 10.)

## II.    STANDARD OF REVIEW:  The Antiterrorism and Effective Death Penalty Act of 1996

### A.  Exhaustion

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254.  The statute requires that before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  § 2254(b)(1)(A).  To meet the exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In other words, "[t]he exhaustion doctrine bars a claim if it is raised for the first time in a federal habeas petition."  Mickens v. Taylor, 240 F.3d 348, 356 (4th Cir. 2001) (en banc).

To fairly present the claim, a petitioner must present to the state courts "both the operative facts and the controlling legal principles" associated with each claim.  Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citation omitted).  To satisfy this requirement, the claim must "be presented face-up and squarely."  Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

### B.  Procedural Default

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default."  Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).  One way in which procedural default occurs is when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the

exhaustion requirement would now find the claims procedurally barred." Id. (internal quotation marks omitted).

Absent a showing of cause and prejudice, or a fundamental miscarriage of justice, a federal habeas court will not review a claim that is procedurally defaulted. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). To show cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Murray v. Carrier, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding," Roach v. Angelone, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, [a p]etitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) (citing Coleman v. Thompson, 501 U .S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. "Actual innocence," however, requires "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

## III.  DISCUSSION

### A.  Ground One

Ground One of the Petition poses the following question:  "Can it be fair to allege, [sic] that assistant appellate counsel was ineffective for a failure to articulate appellate court review for [ineffective assistance of counsel] on trial counsel?"  (Pet., supra, at 6.)  Petitioner states as supporting facts that:

> In defendants Appellate Brief, Charns established the actions that supported a legal question of trial counselor Pearce's strategies, relating to the jury instructions.  But failed to include the statute that Pearce failed to comply with, or raise such issue relevantly under N.C. Rules of Appellate Proc. or, law that could allow review.

(Pet., <u>supra</u>.) Respondent, understandably, contends that this is a claim alleging ineffective assistance of appellate counsel for failing to adequately present a claim on direct appeal. Respondent contends further that Petitioner failed to raise this claim in the state courts; that it is unexhausted on federal habeas review but not procedurally defaulted because Petitioner may return to state court to present this claim; and that this claim must be dismissed on exhaustion grounds.

In his Response to the Motion to Dismiss, however, Petitioner denies raising any ineffective assistance of appellate counsel claim in the instant Petition. (Pet'r's Resp. 3, Doc. No. 10) ("Petitioner has not sought to gain relief from Ineffective Assistance of appellate counsel only Trial counsel."). He states that his "one and only Ground for Relief stated at the begining [sic] of the Habeas is 'Ground One: (Ineffective Assistance of Trial Counsel).' Petitioner is not seeking in this Habeas, relief for appellate counsel." (Pet'r's Resp., <u>supra</u>, at 1.) Petitioner is referring to the "Ground One" discussed in his "Memorandum of Law in Support of Habeas Application" which he submitted with his Petition. (Doc. No. 1-1.)

In light of Petitioner's avowals, this Court finds that Petitioner has waived any claim of ineffective assistance of appellate counsel arguably raised in the instant Petition and/or Memorandum of Law. This waiver does not preclude Petitioner from raising a properly exhausted ineffective assistance of appellate counsel claim in a future habeas petition § 2254.

**B. Ineffective Assistance of Trial Counsel**

In the instant Petition, Petitioner asserts the following:

The jury instructions relieved the prosecution of it's burden of proof and, likely deprived defendant of a right to a fair trial thus, requiring reversal of the judgments. Trial counsel didn't object nor ask for limiting instruction or accomplice instruction. The trial court's instruction on, interested witnesses was contrary to the State's evidence testified by co-defendant LaTanya Taylor. The trial court also failed to include, Accomplice Instruction or that the definition of a firearm under the FireArm (Felony FireArms Act). Trial counsel failed to ask for curative instructions that would cure the defects in the instructions. That defines a FireArm or, implies the consideration of Accomplice testimony. Or that, such testimony should've been stricken from the instructions.

("Ground Two," Pet., supra, at 7-8.) Respondent contends that these ineffective assistance of trial counsel claims are unexhausted. In his Response, Petitioner asserts that the relief requested in his habeas Petition is the same as that requested in his direct appeal. (Pet'r's Resp., supra, at 3.)

On direct appeal, Petitioner claimed that trial counsel was ineffective for withdrawing a motion for a jury instruction on common law robbery and conspiracy to commit common law robbery; failing to request a jury instruction on the definition of "deadly weapon" where the State's evidence showed that the alleged weapon was a "BB" gun; and failing to object to the trial court curing some of the facial defects in the indictments. (Def.-Appellant's Br. 16-19, Resp't's Ex. 2, Doc. No. 8-3.) Petitioner also raised these claims in his PDR. (Resp't's Ex. 6, Doc. No. 8-7.)

In dismissing Petitioner's ineffective assistance of trial counsel claims, the North Carolina Court of Appeals found that "the cold record is not sufficient to allow us to decide this issue. Accordingly, we dismiss Defendant's [ineffective assistance of counsel] claim[s] without prejudice to his 'right to reassert [these claims] during a subsequent [Motion for Appropriate Relief] proceeding.'" Lipford, 2014 WL 859557 (quoting State v. Fair, 557 S.E.2d 500, 525 (N.C. 2001) (emphasis added). A Motion for Appropriate Relief ("MAR") is the procedure by

which a prisoner may collaterally attack his conviction and sentence in the North Carolina courts.  See N.C. Gen. Stat. § 15A-1415.

In Fair, the Supreme Court of North Carolina held that the state's procedural bar statute, N.C. Gen. Stat. § 15A-1419(a)(3)[1], "is not a general rule that any claim not brought on direct appeal is forfeited on state collateral review.  Instead, the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review."  Fair, 557 S.E.2d at 525 (citing McCarver, 221 F.3d at 589).  Because the North Carolina Court of Appeals determined that the record was not sufficient to allow the court to decide the merits of Petitioner's ineffective assistance of trial counsel claims, it necessarily decided that Petitioner's ineffective assistance of trial counsel claims could not have been brought on direct appeal.  Thus, they are not procedurally barred by § 15A-1419(a)(3) and must be raised in an MAR.

By his own admission, Petitioner has not raised these claims in an MAR in the state courts.  (Pet., supra, at 6, 8.)  Therefore, Petitioner has not exhausted his state remedies as required by §2254(b)(1)(A) with regard to the ineffective assistance of counsel claims raised in his direct appeal, and this Court may not review them on their merits.

Petitioner also alleges that trial counsel was ineffective for failing to object to the trial court's "interested witness" instruction to the jury; failing to request an "Accomplice Testimony for the Prosecution" instruction; failing to object to witness LaToya Taylor's testimony; failing to file a motion to suppress LaToya Taylor's testimony; and failing to move to dismiss the

---

[1] North Carolina's procedural bar statute provides, in relevant part, that a claim raised in an MAR shall be denied when the defendant was in an adequate position to have raised it in a previous appeal but did not do so, absent a showing of cause and prejudice or fundamental miscarriage of justice, (i.e., actual innocence).  N.C. Gen. Stat. §§ 15A-1419(a)(3) and (b) (2011).

charges at the close of the State's evidence.  (Pet'r's Mem. of Law, supra, at 4-15.)  Respondent contends that these claims also are unexhausted.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  Kimmelman v. Morrison, 477 U.S. 365, 3745 (1986).  In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim.  466 U.S. 668, 687 (1984).  First, "the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, "the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id.

Having reviewed and considered the state court record (Def.-Appellant's Br., supra) it is apparent that Petitioner failed to present to the state court the operative facts and legal arguments necessary to exhaust these ineffective assistance of counsel claims.  See Baker, 220 F.3d at 289; Mallory, 27 F.3d at 995.  Moreover, Petitioner has not demonstrated that the court to which he would be required to present these claim in order to meet the exhaustion requirement would now find them to be procedurally barred.[2]  Cf. N.C. Gen. Stat. § 15A-1419.  Therefore, these claims are not exhausted, and this Court may not review on their merits.  Mickens 240 F.3d at 356.

## IV.    ORDER

**FOR THE REASONS STATED HEREIN, IT IS, THEREFORE, ORDERED** that:

---

[2] There is no apparent reason that the North Carolina Court of Appeals would have reviewed these ineffective assistance of counsel claims, had they been raised on direct review, and not reviewed the others.

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE** as unexhausted;

2) Respondent's Motion to Dismiss (Doc. No. 7) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: September 9, 2015

Frank D. Whitney
Chief United States District Judge